UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBIZON SCHOOL OF SAN FRANCISCO, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SENTINEL INSURANCE COMPANY LTD,<br><br>Defendant. | Case No. 20-cv-08578-TSH<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 8 |

## I.  INTRODUCTION

Plaintiffs Barbizon School Of San Francisco, Inc. and Barbizon School of Modeling Of Manhattan, Inc. bring this action against their insurance company, Defendant Sentinel Insurance Company, LTD., seeking coverage for economic losses to their businesses caused by COVID-19. Pending before the Court is Sentinel's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 8. Plaintiffs filed an Opposition (ECF No. 19) and Sentinel filed a Reply (ECF No. 22). The Court finds this matter suitable for disposition without oral argument and **VACATES** the April 1, 2021 hearing. *See* Civ. L.R. 7-1(b). Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS** Sentinel's motion for the following reasons.

## II.  BACKGROUND

Plaintiffs are independently owned and operated licensees of Barbizon International, Inc., offering modeling, acting, and studio services at locations in New York City (Barbizon-NY) and on the West Coast (Barbizon-West). Compl. ¶ 10, ECF No. 1.

**A.      The West Coast Policy**

Barbizon-West procured insurance coverage under Policy Number 57 SBA UZ9898 for the policy period July 8, 2019, through July 8, 2020. The West Coast Policy was issued as of April 19, 2019. *Id.* ¶ 11. The basic coverage provisions of the policy are written on the "Special Property Coverage Form," Form SS 00 07 07 05, which states:

> A. COVERAGE
>
> We will pay for direct physical loss of or physical damage to Covered Property at the premises described in the Declarations (also called "scheduled premises" in this policy) caused by or resulting from a Covered Cause of Loss.

*Id.* ¶ 12. "Covered Property" under the Special Property Coverage Form includes the "building(s) and structure(s) described in the Declarations," Special Property Coverage Form, A(1)(a). *Id.* ¶ 13. Under the Special Property Coverage Form in the West Coast policy "Covered Cause of Loss" is defined as follows:

> B. 3. Covered Causes of Loss
>
> RISKS OF DIRECT PHYSICAL LOSS unless the loss is:
>
> a. Excluded in Section B., EXCLUSIONS; or
> b. Limited in Paragraph A.4. Limitations; that follow.

*Id.* ¶ 15. "Section B., EXCLUSIONS" of the Special Property Coverage Form," Form SS 00 07 07 05, for the West Coast Policy does not itself have a virus exclusion. An exclusion was, however, added to "Section B., EXCLUSIONS" of the West Coast Policy through a "LIMITED FUNGI, BACTERIA OR VIRUS COVERAGE" Endorsement, Form SS 40 93 07 05. *Id.* ¶ 16.

One portion of the virus endorsement removes all virus coverage from the Special Property Coverage Form by adding an exclusion to Section B of the Special Property Coverage Form:

> 2. The following exclusion is added to Paragraph B.1. Exclusions of the … Special Property Coverage Form…:
>
> i. "Fungi", Wet Rot, Dry Rot, Bacteria And Virus
>
> We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss:

2

> (1) Presence, growth, proliferation, spread or any activity of "fungi", wet rot, dry rot, bacteria or virus.
>
> (2) But if "fungi", wet rot, dry rot, bacteria or virus results in a "specified cause of loss" to Covered Property, we will pay for the loss or damage caused by that "specified cause of loss".
>
> This exclusion does not apply:
>
> (1) When "fungi", wet or dry rot, bacteria or virus results from fire or lightning; or
>
> (2) To the extent that coverage is provided in the Additional Coverage – Limited Coverage for "Fungi", Wet Rot, Dry Rot, Bacteria and Virus with respect to loss or damage by a cause of loss other than fire or lightning.
>
> This exclusion applies whether or not the loss event results in widespread damage or affects a substantial area.

*Id.* 18. The virus endorsement then adds some very limited virus coverage:

> b. We will pay for loss or damage by "fungi", wet rot, dry rot, bacteria and virus. As used in this Limited Coverage, the term loss or damage means:
>
> (1) Direct physical loss or direct physical damage to Covered Property caused by "fungi", wet rot, dry rot, bacteria or virus, including the cost of removal of the "fungi", wet rot, dry rot, bacteria or virus;
>
> (2) The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungi", wet rot, dry rot, bacteria or virus; and
>
> (3) The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungi", wet rot, dry rot, bacteria or virus are present.

*Id.* ¶ 19. That limited virus coverage is limited further by the requirement that, for coverage to apply, the loss must be due to a limited number of things. The coverage is restricted by this language:

> a. The coverage described in 1.b. below only applies when the "fungi", wet or dry rot, bacteria or virus is the result of one or more of the following causes that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.
>
> (1) A "specified cause of loss" other than fire or lightning;

*Id.* ¶ 20. "Specified Cause of Loss" is defined in the Special Property Coverage Form as follows:

3

> 19. "Specified Cause of Loss" means the following:
> Fire; lightning; explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

*Id.* ¶ 21. As a result, the virus endorsement states that Sentinel will pay for "[d]irect physical loss or direct physical damage to Covered Property caused by . . . virus," provided that such "direct physical loss or direct physical damage" is caused by a virus that "is the result of" "explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage." *Id.* ¶ 22.

**B.     The New York Policy**

Barbizon-NY procured insurance coverage under Policy Number 57 SBA BG9898 for the policy period September 14, 2019, through September 14, 2020. The New York policy was issued as of July 3, 2019, almost three months after the West Coast policy. *Id.* ¶ 23.

The New York policy, like the West Coast policy, is based upon "Special Property Coverage Form," Form SS 00 07 07 05, which states:

> A. COVERAGE
>
> We will pay for direct physical loss of or physical damage to Covered Property at the premises described in the Declarations (also called "scheduled premises" in this policy) caused by or resulting from a Covered Cause of Loss.

*Id.* ¶ 24. The New York policy does not include the virus endorsement. *Id.* ¶¶ 26-27.

Beginning on March 7, 2020, New York Governor Andrew Cuomo and New York City Mayor Bill DeBlasio issued a series of executive orders. Among other things, those executive orders, declared "a State disaster emergency for the entire State of New York," closed all schools, and ultimately required the closure of non-essential businesses in New York City. *Id.* ¶¶ 35-41. The NY policy provides "Civil Authority Coverage" as follows:

> q. Civil Authority
>
> (1) This insurance is extended to apply to the actual loss of Business Income you sustain when access to your "scheduled premises" is specifically prohibited by order of a civil authority as the direct result

4

of a Covered Cause of Loss to property in the immediate area of your "scheduled premises".

(2) The coverage for Business Income will begin 72 hours after the order of a civil authority and coverage will end at the earlier of:

(a) When access is permitted to your "scheduled premises", or

(b) 30 consecutive days after the order of the civil authority.

*Id.* ¶ 42. The Civil Authority coverage is triggered by an "order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area" of the NY Location. *Id.* ¶ 43. "Immediate area" is not defined.

The NY policy provides "Business Income" coverage as follows:

o. Business Income

(1) We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or physical damage to property at the "scheduled premises", including personal property in the open (or in a vehicle) within 1,000 feet of the "scheduled premises", caused by or resulting from a Covered Cause of Loss.

\* \* \*

(5) With respect to the coverage provided in this Additional Coverage, suspension means:

(a) The partial slowdown or complete cessation of your business activities; or

(b) That part or all of the "scheduled premises" is rendered untenantable as a result of a Covered Cause of Loss if coverage for Business Income applies to the policy.

*Id.* ¶ 58. The NY policy also provides "Extended Business Income" coverage. The "Extended Business Income" coverage in the Special Property Coverage Form is entirely replaced by the following from the "Stretch for Schools" Endorsement:

r. Extended Business Income

(1) If the necessary suspension of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

(a) Begins on the date property is actually repaired, rebuilt or replaced and "operations" are resumed; and

5

> (b) Ends on the earlier of:
>
> (i) The date you could restore your "operations" with reasonable speed, to the condition that would have existed if no direct physical loss or damage occurred; or
>
> (ii) 30 consecutive days after the date determined in (1)(a) above. Loss of Business Income must be caused by direct physical loss or physical damage at the "scheduled premises" caused by or resulting from a Covered Cause of Loss.
>
> (2) With respect to the coverage provided in this Additional Coverage, suspension means:
>
> (a) The partial slowdown or complete cessation of your business activities; and
>
> (b) That a part or all of the "scheduled premises" is rendered untenantable as a result of a Covered Cause of Loss.

*Id.* ¶ 61. The "Stretch for Schools" endorsement increases the 30-day period of loss under the NY Policy's "Extended Business Income" coverage to 120 days:

> 4. Extended Business Income
>
> In the Extended Business Income Additional Coverage, paragraph 4.j.(1)(b)(ii) of the Standard Property Coverage Form and paragraph 5.r.(1)(b)(ii) of the Special Property Coverage Form are amended to read as follows:
>
> (b) 120 consecutive days after the date determined in (a) above.

*Id.* ¶ 62. The "Stretch for Schools" endorsement also increases the limits for "Business Income and Extra Expense" coverage:

> c. Business Income and Extra Expense
>
> (1) If Business Income or Extra Expense are provided under this policy, the most we will pay in any one occurrence in subparagraph (3) is increased from $50,000 to $500,000 in any one occurrence at each premises.
>
> (2) The Limit of Insurance stated above is the maximum Limit of Insurance available for this coverage under this policy.

*Id.* ¶ 63.

**C.    Plaintiffs' Allegations**

Plaintiffs filed the present complaint on December 4, 2020, alleging they were forced to close the insured locations in March 2020 due to the COVID-19 pandemic, which was caused by

the pervasive presence of the virus SARS-CoV-2. *Id.* ¶ 28. They allege "[t]he presence of the SARS-CoV-2 virus involves a physical interaction with property, making it dangerous and less valuable. This damage is direct, in that the presence of SARS-CoV-2 virus particles renders property dangerous and less valuable," *id.* ¶ 53, and that "Barbizon-NY was unable to use the NY Location because of the virus." *Id.* ¶ 54.

On June 26, 2020, Plaintiffs submitted claims to Sentinel for business interruption losses at the insured locations. *Id.* ¶ 29. Sentinel denied the claims that same day. *Id.* ¶ 30. In a letter dated that day, Sentinel denied coverage under the New York policy by stating: "We have completed a review of your loss and have determined that since the coronavirus did not cause property damage at your place of business or in the immediate area, this loss is not covered." *Id.* ¶ 31. Similarly, in separate letter dated the same day, Sentinel denied coverage under the West Coast policy with identical language stating: "We have completed a review of your loss and have determined that since the coronavirus did not cause property damage at your place of business or in the immediate area, this loss is not covered." *Id.* ¶ 32. The West Coast letter went on to state that: "Even if the virus did cause damage, it is excluded from the policy, and the limited coverage available for losses caused by virus does not apply to the facts of your loss." *Id.* ¶ 33.

Barbizon-NY asserts three causes of action: (1) breach of contract; (2) breach of duty of good faith and fair dealing; and (3) unfair business practices, Cal. Bus. & Prof. Code §§ 17200 et seq. ("UCL"). *Id.* ¶¶ 34-88. Barbizon-West asserts a single cause of action for violation of the UCL. *Id.* ¶¶ 78-88. Barbizon-West's UCL claim rests on the theory that although the West Coast Policy provides certain limited coverage for virus-related losses, Sentinel has allegedly "taken the position that a virus cannot cause 'direct physical loss of or physical damage to' property under *any* circumstances." *Id.* ¶¶ 79-80 (emphasis in original). Barbizon-West thus claims Sentinel's "sale and marketing of the Limited Fungi, Bacteria Or Virus Coverage constitutes false, unfair, fraudulent, and/or deceptive business practices" under the UCL. *Id.* ¶¶ 81-83.

Sentinel filed the present motion on February 2, 2021, seeking dismissal of all claims.

### III.   LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal

sufficiency of a claim. A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation and quotation marks omitted). Rule 8 provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Twombly*, 550 U.S. at 555 (quotations and citation omitted).

In considering a motion to dismiss, the court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citations and quotations omitted). However, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## IV.   DISCUSSION

Sentinel argues Plaintiffs' claims must be dismissed because the policies do not cover their losses. Specifically, Sentinel argues Barbizon-NY is not entitled to business income and extra

expense coverage because it fails to allege any direct physical loss of or damage to property, as required for all forms of coverage under the policy. Mot. at 1. Although Plaintiffs note in their complaint that Barbizon-West's policy has a virus exclusion while Barbizon-NY's policy does not, Sentinel argues that distinction is meaningless because, under either policy, Plaintiffs must demonstrate an entitlement to coverage in the first instance. *Id.* It maintains Barbizon-NY cannot do so because it suffered no direct physical loss of or damage to its property. *Id.* at 1-2.

Sentinel argues Barbizon-NY has not stated a plausible claim to "Civil Authority" coverage for the additional reason that it has not alleged facts meeting the requirements for Civil Authority Coverage. *Id.* at 2. It notes that Barbizon-NY does not allege any property in the immediate area of the scheduled premises suffered direct physical loss, and it argues Barbizon-NY has not plausibly alleged that access to its business was specifically prohibited as it fails to identify a single civil authority order doing so. *Id.* It also notes the government orders were issued to limit the spread of COVID-19, not because of property damage. *Id.*

Sentinel argues Barbizon-NY fails to state a plausible claim under the UCL because it has not alleged a breach of the policy or shown there is coverage. *Id.* It notes that at least nine courts in California have rejected similar UCL claims in lawsuits seeking coverage for COVID-19 business interruption losses, and that Barbizon-NY "cannot manufacture a claim by attempting to assign to Sentinel a position it does not hold, and it cannot create coverage where none exists. Contrary to Barbizon-NY's insistence, a plaintiff's claim does not turn on a theoretical assessment of whether any virus anywhere could cause harm." *Id.*

Finally, as to Barbizon-West's UCL claim, Sentinel argues Barbizon-West premises its sole cause of action under California's UCL on an illusory coverage argument that has been rejected. It contends that Barbizon-West asks this Court to theorize that coverage under the policy's limited virus coverage "is an impossibility even though it has not even attempted to show entitlement to such coverage." *Id.* at 3.

**A.   Insurance Policy Interpretation**

"[I]nterpretation of an insurance policy is a question of law." *Waller v. Truck Ins. Exch.,*

*Inc.*, 11 Cal. 4th 1, 18 (1995), *as modified on denial of reh'g* (Oct. 26, 1995).[1] "While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply." *Bank of the W. v. Superior Court*, 2 Cal. 4th 1254, 1264 (1992). "If contractual language is clear and explicit, it governs." *Id.* In addition, "[t]he terms in an insurance policy must be read in context and in reference to the policy as a whole, with each clause helping to interpret the other." *Sony Comput. Sony Computer Ent. Am. Inc. v. Am. Home Assur. Co.*, 532 F.3d 1007, 1012 (9th Cir. 2008) (citing Cal. Civ. Code § 1641; *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal. 4th 854, 867 (1993); *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115 (1999)). "[I]f the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." *Bank of the W.*, 2 Cal. 4th at 1264-65 (quoting Cal. Civ. Code § 1649). "Only if this rule does not resolve the ambiguity do [courts] then resolve it against the insurer." *Id.* at 1265. California courts have cautioned that language in a contract "cannot be found to be ambiguous in the abstract," and courts should "not strain to create an ambiguity where none exists." *Waller*, 11 Cal. 4th at 18-19.

**B.    Physical Loss or Damage**

The parties dispute whether Plaintiffs' allegations establish loss and/or damage within the Policies' coverage. Sentinel argues the presence of COVID-19 does not constitute physical loss or damage because the virus does not cause physical alteration of the property. Mot. at 8-9. In response, Plaintiffs argue the phrase "direct physical loss of or physical damage to" is ambiguous, noting that different courts have interpreted this language in different ways and "the Court cannot find this language to be unambiguous without concluding that those other interpretations, adopted by other reasonable jurists, are unreasonable." Opp'n at 12.

Under California law, the insured has the initial burden of proving that its loss is covered. *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 777

---

[1] Although Barbizon-NY's claims pertain to property in New York, California and New York law on the coverage issues here do not conflict. *See Emps. Mut. Cas. Co. v. N. Am. Specialty Flooring, Inc.*, 424 F. Supp. 3d 958, 967 (E.D. Cal. 2019).

(2010). Once the insured has made that showing, the burden is on the insurer to prove the claim is specifically excluded. *Id.* California courts have interpreted "direct physical loss" to require a "distinct, demonstrable, physical alteration of the property" or a "physical change in the condition of the property." *See id.* at 779-800 (simplified). Accordingly, "a detrimental economic impact," such as limited use of property, "unaccompanied by a distinct, demonstrable, physical alteration of the property," is insufficient to claim a "direct physical loss." *Id.* at 779. Where a policy additionally requires "direct physical loss of or physical damage to property," there must either be a physical change in the condition or a permanent dispossession of the property. *See Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 2020 WL 5525171, at *4 (N.D. Cal. Sept. 14, 2020) ("finding that a more expansive interpretation of 'direct physical loss of property' to include dispossession of property would require a 'permanent dispossession.'").

"The overwhelming majority of courts have concluded that neither COVID-19 nor the governmental orders associated with it cause or constitute property loss or damage for purposes of insurance coverage." *Out West Rest. Grp., Inc. v. Affiliated Ins. Co.*, 2021 WL 1056627, at *4 (N.D. Cal. Mar. 19, 2021). "These decisions have reasoned that the virus fails to cause physical alteration of property because temporary loss of use of property (if any) during a pandemic and while government orders are in effect does not qualify as physical loss or damage." *Id.* (citing *Protégé Rest. Partners LLC v. Sentinel Ins. Co., Ltd.*, 2021 WL 428653, at *4 (N.D. Cal. Feb. 8, 2021) ("Every California court that has addressed COVID-19 business interruption claims to date has concluded that government orders that prevent full use of a commercial property or that make the business less profitable do not themselves cause or constitute "direct physical loss of or physical damage to" the insured property.") (collecting cases); *Kevin Barry Fine Art Assocs. v. Sentinel Ins. Co., Ltd.*, 2021 WL 141180, at *3 (N.D. Cal. Jan. 13, 2021) ("Numerous courts have considered whether allegations similar to KBFA's constitute a 'direct physical loss of . . . property, and the overwhelming majority have concluded that temporarily closing a business due to government closure orders during the pandemic does not constitute a direct loss of property under insurance policies with the same coverage provision.") (collecting cases); *Palmdale Est., Inc. v. Blackboard Ins. Co.*, 2021 WL 25048 *2 (N.D. Cal., 2021) ("The majority view —

11

including in this district — is that 'direct physical loss' provisions . . . do not cover lost business income or expenses resulting from closure orders. . . ."); *O'Brien Sales & Mktg., Inc. v. Transp. Ins. Co.*, 2021 WL 105772, at *4 (N.D. Cal. Jan. 12, 2021) ("'the presence of the virus itself, or of individuals infected with the virus, at [plaintiff's] business premises or elsewhere [does] not constitute direct physical loss of or damage to property.'") (quoting *Pappy's Barber Shops, Inc. v. Farmers*, ___ F. Supp. 3d ___, 2020 WL 5847570, at *1 (S.D. Cal. Oct. 1, 2020) ("The primary additions to the proposed amended complaint are speculative allegations that the COVID-19 virus, or individuals infected by the virus, likely had entered Plaintiffs' premises at the time of the COVID-19 Civil Authority Orders.  Even assuming the truth of these allegations, the presence of the virus itself, or of individuals infected the virus, at Plaintiffs' business premises or elsewhere do not constitute direct physical losses of or damage to property.  Moreover, even if they do constitute direct physical losses of or damage to property, they were not the cause of the business income losses for which Plaintiffs' seek coverage here.")); *Ba Lax, LLC v. Hartford Fire Ins. Co.*, 2021 WL 144248, at *3 (C.D. Cal. Jan. 12, 2021) (collecting cases)).

Here, Plaintiffs concede there has been no physical damage to or alteration of their property.  *See* Opp'n at 17, 19-20, 23-25.  Thus, since the policies require physical loss or damage, and Plaintiffs' claims do not constitute physical loss or damage as a matter of law, Plaintiffs cannot state a valid claim for relief.

Plaintiffs cite *Mudpie* in support of their position that COVID-19 on property would be capable of causing damage to property.  Opp'n at 13.  However, although the *Mudpie* court noted the phrase "direct physical loss of" property alone does not require physical alteration to property, it nevertheless held that where, as here, an insurance policy requires "direct physical loss of or damage" and provides for coverage through a "period of restoration" that ends when the property at the premises "should be repaired, rebuilt or replaced with reasonable speed and similar quality," the "damage contemplated by the [p]olicy is *physical* in nature." *Mudpie*, 2020 WL 5525171at *4 (citation omitted; emphasis added).  Plaintiffs also fail to acknowledge that the court held that a "loss of functionality" does not constitute a direct physical loss of property absent an external physical force that "induced a detrimental change in the property's capabilities" beyond the

12

government closure orders. *Id.* at \*4-6. *Mudpie* thus rejected the same argument Plaintiffs advance here.

Plaintiffs also rely on *Crisco v. Foremost Insurance Company Grand Rapids, Michigan*, 2020 WL 7122476 (N.D. Cal. Dec. 4, 2020). However, in *Crisco*, the court found there was physical damage to property, which triggered coverage. A fire had destroyed the essential infrastructure upon which mobile homes depended resulting in a "distinct, demonstrable, physical alteration" to the insureds' property. *Id.* at \*4-5 (quoting *MRI*, 187 Cal. App. 4th at 779). Thus, the court's reasoning in *Crisco* is consistent with *MRI* and other decisions holding "direct physical loss" contemplates a distinct, demonstrable, physical alteration of the property. *See Robert W. Fountain, Inc. v. Citizens Ins. Co. of Am.*, 2020 WL 7247207, at \*3 (N.D. Cal. Dec. 9, 2020) (citing *Crisco*).

Plaintiffs cite to *Hughes v. Potomac Insurance Company of District of Columbia*, a case in which a landslide swept away the sub adjacent and lateral support essential to the stability of the insured dwelling. 199 Cal. App. 2d 239, 248-49 (1962). That case is also distinguishable because the insurer had argued the "dwelling building" overhanging a steep cliff was not damaged because, while the building was still intact, the court disagreed, holding the building had suffered "real and severe damage when the soil beneath it slid away and left it overhanging a 30-foot cliff" and was thus rendered uninhabitable. *Id.* at 248-49. In such situations, the court held that "tangible injury to the physical structure itself" is not necessary to trigger coverage. *Id.* at 249. Here, Plaintiffs' property has not been rendered completely useless or uninhabitable. For this reason, multiple courts faced with COVID-19-related business interruption claims have found *Hughes* inapposite. *See Kevin Barry Fine Art Assocs.*, 2021 WL 141180, at \*5; *Long Affair Carpet & Rug, Inc. v. Liberty Mut. Ins. Co.*, 2020 WL 6865774, at \*3 (C.D. Cal. Nov. 12, 2020); *Musso & Frank Grill Co., Inc. v. Mitsui Sumitomo Ins. USA Inc.*, 2020 WL 7346569, at \*3 (Cal. Super. Ct. Nov. 9, 2020).[2]

---

[2] Plaintiffs also cite to two recent state court decisions – *P.F. Chang's China Bistro, Inc. v. Certain Underwriters at Lloyd's of London*, No. 20STCV17169 (Cal. Super. Ct. Feb. 4, 2021) and *Goodwill Industries of Orange Cty., Cal. v. Philadelphia Indemnity Ins. Co.*, 2021 WL 476268 (Cal. Super. Ct. Jan. 28, 2021) – but these two trial court decisions are outliers and stand in stark

13

The cases Plaintiffs cite are also distinguishable because this case involves a virus, which "can be disinfected and cleaned" from surfaces. *See, e.g., O'Brien*, 2021 WL 105772, at *4 (no physical loss or damage because surfaces contaminated with the novel coronavirus "can be disinfected and cleaned") (citing *Mama Jo's, Inc. v. Sparta*, 2018 WL 3412974, *9 (S.D. Fla., 2018), *aff'd*, 823 F. App'x 868 (11th Cir. 2020) (presence of construction debris and dust from road work did not constitute physical loss of or damage to covered property; "[t]he fact that the restaurant needed to be cleaned more frequently does not mean Plaintiff suffered a direct physical loss or damage")); *Kevin Barry Fine Art Assocs.*, 2021 WL 141180, at *6 ("Even if KBFA had included allegations regarding the virus being present on and damaging the property, they would not be plausible."; citing cases in which there was no coverage because COVID-19 can be disinfected and cleaned from surfaces); *Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*, 2020 WL 7351246, at *7 (W.D. Tex. Dec. 14, 2020) ("Even assuming that the virus that causes COVID-19 was present at Plaintiffs' properties, it would not constitute the direct physical loss or damage required to trigger coverage under the Policy because the virus can be eliminated. The virus does not threaten the structures covered by property insurance policies, and can be removed from surfaces with routine cleaning and disinfectant"); *Promotional Headwear Int'l v. Cincinnati Ins. Co.*, 2020 WL 7078735, at *8 (D. Kan. Dec. 3, 2020) ("even assuming that the virus physically attached to covered property, it did not constitute the direct, physical loss or damage required to trigger coverage because its presence can be eliminated. Much like the dust and debris at issue in *Mama Jo's*, routine cleaning and disinfecting can eliminate the virus on surfaces"); *Rococo Steak, LLC v. Aspen Spec. Ins. Co.*, 2021 WL 268478, at *4 (M.D. Fla. Jan. 27, 2021) ("like the coating of dust and debris in *Mama Jo's*, the surfaces allegedly contaminated by COVID-19 seem to only require cleaning to fix.").

---

contrast to the weight of California decisions, including other state court decisions, that have rejected the argument that temporary deprivation of loss of use of property as a result of government closure orders is sufficient for direct physical loss. *See Musso*, 2020 WL 7346569, at *3. The Court also notes that, since Sentinel filed its motion, California courts have issued additional decisions dismissing similar claims brought in the COVID-19 context for failure to plausibly allege direct physical loss. *See Protégé*, 2021 WL 428653, at *3-4; *Selane Prods., Inc v. Cont'l Cas. Co.*, 2021 WL 609257, at *4-5 (C.D. Cal. Feb. 8, 2021).

14

In sum, the Court finds that Plaintiffs have not plausibly alleged "direct physical loss of or damage to" property, as required by the policies, and their alleged losses are not covered as a matter of law. Because the Court finds that Plaintiffs cannot allege direct physical loss or damage, it need not address the scope of the Barbizon-West policy's virus exemption. *See Kevin Barry Fine Art Assocs.*, 2021 WL 141180, at *3, 6 (court determined it did not need to address the virus exclusion in a policy because the plaintiff had failed to allege direct physical loss); *Out West*, 2021 WL 1056627, at *6 (same); *Geragos & Geragos Engine Co. No. 28, LLC v. Hartford Fire Ins. Co.*, 2020 WL 7350413, at *4 (C.D. Cal. Dec. 3, 2020) ("Because the Court finds that G&G has not suffered any 'direct physical loss of or physical damage to' its property, the Court . . . does not reach the issue of whether the virus exclusion applies."); *Stanford Ranch, Inc. v. Maryland Cas. Co.*, 89 F.3d 618, 626-27 (9th Cir. 1996) (If there is no coverage, the inquiry ends as "[t]here is no need to look to the exclusions because they cannot expand the basic coverage granted in the insuring agreement."); *Glavinich v. Commonwealth Land Title Ins. Co.*, 163 Cal. App. 3d 263, 270 (1984), *as modified* (Jan. 15, 1985) ("There are literally hundreds of problems that may affect real property . . . and it would be a limitless task for the insurer to specifically enumerate each of them as being excluded from coverage. Coverage is defined in the first instance by the insuring clause, and when an occurrence is clearly not included within the coverage afforded by the insuring clause, it need not also be specifically excluded.").

### C. Civil Authority

As noted above, the New York policy also provides coverage for when access to a premise is prohibited by order of a civil authority. Compl. ¶¶ 42-43. Plaintiffs argue entitlement to civil authority coverage because "[t]he Complaint alleges that the losses were caused by the "pervasive presence of the virus SARS-Cov-2 in the cities where the Insured Locations are located.'" Opp'n at 23 (quoting Compl. ¶ 28). However, coverage under this provision is limited to "when access to your 'scheduled premises' is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your 'scheduled premises.'" Compl. ¶ 42. Here, Plaintiffs concede that "access" to Barbizon-NY's property was not "specifically prohibited by" civil authority orders. Opp'n at 28. Barbizon-NY claims only

that it was prohibited "from using its insured property," *id.*, but it does not point to any factual allegations that it was specifically prohibited from accessing its property. That is because the civil authority orders on which Barbizon-NY relies reduced the in-person workforce; they did not deny access to property. *See Food for Thought Caterers Corp. v. Sentinel Ins. Co., Ltd.*, 2021 WL 860345, at *6 (S.D.N.Y. Mar. 6, 2021) (Governor Cuomo's Executive Order "does not amount to denial of access to the property" as the "owner of the property could continue to access the property despite the total reduction in the workforce").

Second, the government orders were issued to prevent the spread of COVID-19, not in response to property damage. *See Mudpie*, 2020 WL 5525171, at *7 (finding no coverage under civil authority provision because government closure orders were intended to prevent the spread of COVID-19 and thus plaintiff failed to establish requisite causal link between damage to adjacent property and denial of access to its store); *Pappy's*, 2020 WL 5847570, at *1 (civil authority provision did not apply because orders were precautionary measures taken to prevent the spread of COVID-19 and not issued as a result of loss or damage to property); *Mortar and Pestle Corp. v. Atain Specialty Ins. Co.*, ___ F.Supp.3d ___, 2020 WL 7495180, at *5 (N.D. Cal. Dec. 21, 2020) (finding it was "apparent from the plain language of the cited civil authority orders that such directives were issued to stop the spread of COVID-19 and not as a result of any physical loss of or damage to property").

Finally, Barbizon-NY fails to identify any property in the immediate area of its property that experienced direct physical loss. Instead, it asserts the "Complaint alleges that the losses were caused by the 'pervasive presence of the virus SARS-Cov-2 in the cities where the Insured Locations are located.'" Opp'n at 9:22-24 (quoting Compl. ¶ 28). But such general allegations are not enough. As the *Food for Thought* court noted, "generalized statements" and "speculative assertions" based on state and local government closure orders, including Mayor DeBlasio's executive orders, "cannot serve as a substitute for a specific allegation that any property near the insured's premises was in fact damaged." 2021 WL 860345, at *7.

### D. Viability of Plaintiffs' Causes of Action

While the Court is sympathetic to Plaintiffs' situation, as discussed above, they have not

16

1   shown they are entitled to coverage under the policies.  And, to the extent Barbizon-NY's breach
2   of the covenant of good faith and fair dealing claim and Plaintiffs' UCL claim rely upon the
3   existence of coverage under the policies, they must also be dismissed.  *See, e.g., Waller*, 11 Cal.
4   4th at 36 ("It is clear that if there is no potential for coverage and, hence, no duty to defend under
5   the terms of the policy, there can be no action for breach of the implied covenant of good faith and
6   fair dealing because the covenant is based on the contractual relationship between the insured and
7   the insurer."); *Krantz v. BT Visual Images*, 89 Cal. App. 4th 164, 178 (2001) (UCL claims "stand
8   or fall depending on the fate of the antecedent substantive causes of action"); *Travelers Cas. Ins.*
9   *Co. of Am. v. Geragos & Geragos*, 2020 WL 6156584, at *5 (C.D. Cal. Oct. 19, 2020) ("Because
10  G&G is not entitled to coverage under the Policy, it cannot state a claim for breach of contract,
11  breach of the implied covenant of good faith and fair dealing, or a UCL violation."); *Wellness*
12  *Eatery La Jolla LLC v. Hanover Ins. Grp.*, 2021 WL 389215, at *8 (S.D. Cal. Feb. 3, 2021)
13  (dismissing breach of covenant of good faith and fair dealing and UCL claims where there was no
14  physical loss or damage under insurance policy); *Mark's Engine Co. No. 28 Rest., LLC v.*
15  *Travelers Indem. Co. of Connecticut*, 2020 WL 5938689, at *6 (C.D. Cal. Oct. 2, 2020) (same);
16  *Karen Trinh, DDS, Inc. v. State Farm Gen. Ins. Co.*, 2020 WL 7696080, at *6-7 (N.D. Cal. Dec.
17  28, 2020) (same); *Selane Prod., Inc.*, 2020 WL 7253378, at *6 (C.D. Cal. Nov. 24, 2020) ("Since
18  Selane has not adequately alleged a predicate violation of law as explained above, its UCL claim
19  fails.").
20          In addition to Plaintiffs' claim under the unlawful prong of the UCL, the complaint seems
21  to allege two other bases for the UCL claim.  Compl. ¶¶ 79-86.  Paragraphs 79-85 allege that
22  Sentinel's sale and marketing of its limited fungi, bacteria or virus coverage is a false, unfair,
23  fraudulent and deceptive business practice because the coverage is worthless.  In addition,
24  paragraph 86 alleges that Sentinel's marketing and sale of the New York policy without clearly
25  and unmistakably stating its view that a virus can never be a covered cause of loss is a false,
26  unfair, fraudulent, and deceptive business practice.  However, the allegations in the complaint with
27  respect to these theories of UCL liability are threadbare.  As to the limited virus coverage, the
28  complaint does not plead sufficient factual information that would allow the Court to infer that the

17

promised coverage is worthless. As to the New York policy, the complaint does not allege any facts to show how the marketing and sale is deceptive. In their opposition, Plaintiffs devote only two paragraphs to their UCL claim, which simply assert that the complaint states a claim. In the very next paragraph, Plaintiffs state that if the Court determines additional allegations are necessary, Plaintiffs request leave to amend. The Court does believe additional allegations are necessary, as the current allegations underlying the UCL claim do not allege enough factual information to make the claim plausible under *Iqbal* and *Twombly*. And the Court will grant leave to amend.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS** Sentinel's motion to dismiss **WITH LEAVE TO AMEND**.[3] The amended complaint shall be filed by April 21, 2021.

**IT IS SO ORDERED.**

Dated: March 31, 2021

THOMAS S. HIXSON
United States Magistrate Judge

---

[3] As the Court did not consider any documents contained therein, the parties' requests for judicial notice (ECF Nos. 9, 20, 23) are denied as moot.

18