UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBIZON SCHOOL OF SAN FRANCISCO, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SENTINEL INSURANCE COMPANY LTD,<br><br>Defendant. | Case No. 20-cv-08578-TSH<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 31 |

## I.   INTRODUCTION

Plaintiffs Barbizon School of San Francisco, Inc. ("Barbizon-West") and Barbizon School of Modeling of Manhattan, Inc. ("Barbizon-NY" and, collectively with Barbizon-West, "Plaintiffs") filed a First Amended Complaint ("FAC") (ECF No. 30) against their insurance company, Defendant Sentinel Insurance Company, LTD. ("Sentinel")[1], seeking coverage for economic losses to their businesses caused by COVID-19.  Pending before the Court is Sentinel's Motion To Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF No. 31.  Plaintiffs filed an Opposition ("Opp'n.") (ECF No. 35) and Sentinel filed a Reply.  ECF No. 38.  Having considered the parties' positions and relevant legal authority, the Court **GRANTS** Sentinel's motion for the following reasons.[2]

---

[1] Plaintiffs refer to Defendant Sentinel as "Hartford," stating that it is a member of The Hartford Financial Services Group, Inc.  FAC p. 1.  Hartford itself is not a named party, hence the Court will refer to Defendant as it is named, *i.e.,* Sentinel.

[2] This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).  The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c).  *See* ECF Nos. 7, 10.

## II. BACKGROUND

**A. Factual Background**

    **1. Parties**

Plaintiffs are independently owned and operated licensees of Barbizon International, Inc., offering modeling, acting, and studio services at locations in New York, NY (Barbizon-NY) and on the West Coast in San Francisco, Los Angeles, and Sacramento, California; Portland, Oregon; and Seattle, Washington (Barbizon-West). FAC ¶ 10. Sentinel is a Connecticut corporation authorized to do business in the State of California, having a principal place of business at One Hartford Plaza, Hartford, Connecticut. *Id*. ¶ 6.

    **2. The West Coast Policy**[3]

Barbizon-West procured insurance coverage under Policy Number 57 SBA UZ9898 ("West Coast Policy" or "WC Policy") for the policy period July 8, 2019, through July 8, 2020, which was issued as of April 19, 2019. ECF No. 8-2 p. 2; FAC ¶ 11. The basic coverage provisions of the policy are written on the "Special Property Coverage Form," Form SS 00 07 07 05, which states:

> A. COVERAGE
> We will pay for direct physical loss of or physical damage to Covered Property at the premises described in the Declarations (also called "scheduled premises" in this policy) caused by or resulting from a Covered Cause of Loss.

WC Policy p. 39; FAC ¶ 12. "Covered Property" under the Special Property Coverage Form includes the "building(s) and structure(s) described in the Declarations," Special Property Coverage Form, A(1)(a) (WC Policy p. 39; FAC ¶ 13), which included five properties in

---

[3] In deciding Sentinel's motion, the Court may consider copies of the NY Policy and the West Coast Policy, which were attached to Sentinel's motion to dismiss the original complaint as Exhibits A and B (*see* ECF Nos. 8-1, 8-2 – page citations correspond to the ECF page numbers), because they are relied upon and incorporated by reference in the FAC. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (when ruling on a Rule 12(b)(6) motion to dismiss, "courts must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference"); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (extending the "incorporation by reference" doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint).

California, Oregon, and Washington.  *See* WC Policy pp. 13-23; FAC ¶ 14.

Under the Special Property Coverage Form (A)(3) in the West Coast policy, "Covered Cause of Loss" is defined as follows:

> 3. Covered Causes of Loss
>
> RISKS OF DIRECT PHYSICAL LOSS unless the loss is:
>
> a. Excluded in Section B., EXCLUSIONS; or
> b. Limited in Paragraph A.4. Limitations; that follow.

WC Policy p. 40; FAC ¶ 15.  "Section B., EXCLUSIONS" of the Special Property Coverage Form," Form SS 00 07 07 05, for the West Coast Policy does not itself have a virus exclusion. WC Policy p. 54; FAC ¶ 16.  However, the West Coast Policy contains a "Limited Fungi, Bacteria Or Virus Coverage" Endorsement, Form SS 40 93 07 05, that limits virus coverage in Section B of the Special Property Coverage Form.  WC Policy pp. 145-47; FAC ¶ 17.  This endorsement includes two parts:

(1) Fungi, Bacteria or Virus Exclusion ("Virus Exclusion") which removes virus coverage under certain circumstances from the West Coast Policy, providing that Sentinel "will not pay for loss or damage caused directly or indirectly by" a virus except if it results in a "specified cause of loss" or from specified causes: "'fungi', wet or dry rot, bacteria or virus results from fire or lightning" (WC Policy p. 145; FAC ¶ 18),[4] and

---

[4] The language of the Virus Exclusion is:

2. The following exclusion is added to Paragraph B.1. Exclusions of the … Special Property Coverage Form…:

i. "Fungi", Wet Rot, Dry Rot, Bacteria And Virus
We will not pay for loss or damage caused directly or indirectly by any of the following.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss:
    (1) Presence, growth, proliferation, spread or any activity of "fungi", wet rot, dry rot, bacteria or virus.
    (2) But if "fungi", wet rot, dry rot, bacteria or virus results in a "specified cause of loss" to Covered Property, we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:
  (1) When "fungi", wet or dry rot, bacteria or virus results from fire or lightning;

3

1  (2) Limited Coverage for "Fungi", Wet Rot, Dry Rot, Bacteria and Virus ("Limited Coverage"),
2  an exception to the Virus Exclusion which provides virus coverage in limited circumstances,
3  including "when the 'fungi', wet or dry rot, bacteria or virus is the result of . . . [a] 'specified
4  cause of loss' other than fire or lightning . . ."[5] (ECF No. 8-2 at 146; FAC ¶ 20. *See* WC Policy
5  pp. 145-47) and covers "[d]irect physical loss or direct physical damage to Covered Property,"
6  including the cost to tear out and replace affected area and the cost of testing after repair.[6]

7  Hence, under the Limited Virus Coverage Endorsement, while the Virus Exclusion
8  generally removes coverage for viruses, the Limited Coverage exception adds back in coverage for
9  specific types of damage caused by specific conditions. Plaintiffs acknowledge that Sentinel
10 "contends" that the Limited Coverage:

---

or
(2) To the extent that coverage is provided in the Additional Coverage – Limited Coverage for "Fungi", Wet Rot, Dry Rot, Bacteria and Virus with respect to loss or damage by a cause of loss other than fire or lightning.

This exclusion applies whether or not the loss event results in widespread damage or affects a substantial area.

WC Policy p. 145; FAC ¶ 18.

[5] "Specified Cause of Loss" is defined in the Special Property Coverage Form as: "[f]ire; lightning; explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage." ECF No. 8-2 at 63, cited in FAC ¶ 21.

[6] The language of the Limited Coverage provision is:

b. We will pay for loss or damage by "fungi", wet rot, dry rot, bacteria and virus. As used in this Limited Coverage, the term loss or damage means:

    (1) Direct physical loss or direct physical damage to Covered Property caused by "fungi", wet rot, dry rot, bacteria or virus, including the cost of removal of the "fungi", wet rot, dry rot, bacteria or virus;

    (2) The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungi", wet rot, dry rot, bacteria or virus; and

    (3) The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungi", wet rot, dry rot, bacteria or virus are present.

WC Policy pp. 146; FAC ¶ 19.

>  *does* obligate [it] to cover [d]irect physical loss or direct physical damage to Covered Property caused by . . . virus," provided that such "direct physical loss or direct physical damage" is caused by a virus that "is the result of" "explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage."

FAC ¶ 22 (emphasis in original).

### 3. The New York Policy

Barbizon-NY procured insurance coverage under Policy Number 57 SBA BG9898 (the "NY Policy," and together with the West Coast Policy, the "Policies") for the policy period September 14, 2019, through September 14, 2020, covering a single property located in New York, New York. *See* ECF No. 8-1 pp. 15-16; FAC ¶¶ 23, 25. The New York policy was issued as of July 3, 2019, almost three months after the West Coast policy. *Id.* ¶ 23. The New York policy does not include a Limited Virus Coverage Endorsement (*id.* ¶¶ 26-27) and hence neither a Virus Exclusion nor a Limited Coverage provision.[7] *Id.* ¶ 47.

### 4. Plaintiffs' Allegations

Plaintiffs allege that they were forced to close the insured locations in March 2020 due to the COVID-19 pandemic, which was caused by the pervasive presence of the virus SARS-CoV-2. FAC ¶ 28. They allege that "[t]he presence of the SARS-CoV-2 virus involves a physical interaction with property, making it dangerous and less valuable. This damage is direct, in that the presence of SARS-CoV-2 virus particles renders property dangerous and less valuable." *Id.* ¶ 53. They further allege that "[t]he SARS-CoV-2 virus and the resulting pandemic led to 'direct physical loss of' the NY Location because Barbizon-NY was unable to use the NY Location because of the virus." *Id.* ¶ 54.

---

[7] The New York policy, like the West Coast policy, is based upon "Special Property Coverage Form," Form SS 00 07 07 05, which also provides that Sentinel "will pay for direct physical loss of or physical damage to Covered Property . . . caused by or resulting from a Covered Cause of Loss." NY Policy, ECF No. 8-1 p. 31; FAC ¶ 24. "Covered Causes of Loss" is defined as in the West Coast policy as "RISKS OF DIRECT PHYSICAL LOSS," unless the loss is specifically excluded or limited in certain other policy provisions. NY Policy p. 32. In both their FAC and Opposition, Plaintiffs include information regarding the NY Policy's "Business Income and Extended Business Income" and "Civil Authority" coverage, as well as school-specific coverage such as the "Stretch for Schools" endorsements, but they never refer to these provisions in their arguments.

On June 26, 2020, Plaintiffs submitted claims to Sentinel for business interruption losses at the insured locations. *Id*. ¶ 29. Sentinel denied the claims and sent letters to Plaintiffs that same day ("NY Denial Letter" and "West Coast Denial Letter," collectively the "Denial Letters"). *Id*. ¶ 30. Both letters stated, "We have completed a review of your loss and have determined that since the coronavirus did not cause property damage at your place of business or in the immediate area, this loss is not covered." *Id*. ¶¶ 31, 32. The West Coast Denial Letter went on to state that "[e]ven if the virus did cause damage, it is excluded from the policy, and the limited coverage available for losses caused by virus does not apply to the facts of your loss." *Id*. ¶ 33.

Sentinel also relied on the "pollution exclusion" as "further grounds for denial of the COVID-19 claims."[8] *Id*. ¶ 18. The Denial Letters stated that "[t]he coronavirus is understood to be an irritant or contaminant which causes or threatens to cause physical impurity, unwholesomeness and threatens human health or welfare and that, for that reason, even if coverage were otherwise available for loss caused by coronavirus, the pollution exclusion could further bar coverage for the loss." *Id*. ¶ 85. Plaintiffs allege that Sentinel's reliance on the pollution exclusion rendered "the marketing and sale of policies including the [Limited Coverage] provision a false, unfair, fraudulent and/or deceptive business practice" because Sentinel's "interpretation of the pollution exclusion renders the purported virus coverage in the [Limited Coverage] meaningless and worthless." *Id*. ¶ 86. Plaintiffs allege that despite offering the Limited Coverage provision, "[w]hen put to the test, [Sentinel] has taken the position that a virus cannot cause 'direct physical loss of or physical damage to' property under any circumstances." *Id*. ¶ 80.

Plaintiffs further allege that "Sentinel sold the same insured a nearly identical policy" (Opp'n at 14), differing only in the inclusion of the Limited Coverage in the West Coast Policy, yet Sentinel denied coverage under both policies, such that different policies have the same effect with respect to Plaintiffs' claim for damages due to COVID-19-related business losses. *See* FAC ¶¶ 2, 3. Plaintiffs contends that "the virus coverage, even if limited, has to mean something real; if

---

[8] The "pollution exclusion" is found at ECF No. 8-2 at 55-56.

1  it does not, its marketing and sale is false, unfair, fraudulent, and/or deceptive (hereinafter

2  collectively, 'bait and switch' for ease of reference)." Opp'n at 14:19-21. Plaintiffs assert that

3  "Sentinel's 'bait and switch' derives largely from the fact that its own interpretation of the Limited

4  Coverage would exclude all business losses that Barbizon could conceivably incur in connection

5  with a virus." *Id*. at 14:24-15:2.

### B.     Procedural Background

Plaintiffs filed the initial complaint on December 4, 2020 alleging three causes of action: breach of contract and breach of the implied covenant of good faith and fair dealing for failing to cover business-interruption losses they suffered because of COVID-19 that they contend should have trigged coverages under the Sentinel insurance policies, as well as a putative claim for Unfair Business Practices in Violation of California Business & Professions ("B&P") Code § 17200 *et seq*. ("UCL" or "Section 17200") based primarily on the allegation that Sentinel's marketing and selling of insurance policies including Limited Coverage was a deceptive and unfair business practice because the coverage was allegedly illusory. ECF No. 1.

On February 2, 2021, Sentinel moved to dismiss Plaintiffs' entire complaint for failure to state a claim for relief. ECF No. 8. The Court issued an order on March 31, 2021 dismissing all of Plaintiffs' claims with leave to amend ("Dismissal Order"). ECF No. 24. Plaintiffs filed their FAC on May 19, 2021. ECF No. 30. Although the FAC lays out the same three causes of action, Plaintiffs expressly disclaim their intention to reassert the first two, the breach of contract and breach of the implied covenant of good faith and fair dealing claims. FAC ¶¶ 34, 69. They repeat the allegations of the first and second claims in the FAC "since they are incorporated into Plaintiffs' below 3rd Cause of Action," but state that, while they reserve their right to appeal, they do not seek reconsideration of the Dismissal Order. FAC ¶¶ 34, 69. Similarly, the prayers for relief for the first two claims state that Plaintiffs are "not currently seeking" that relief and "reserving right to appeal." FAC, p.18. The FAC, then, asserts only one claim, the "third" cause of action for violation of the UCL.

For reasons unknown, although the Dismissal Order granted Plaintiffs leave to amend all causes of action, *see* ECF No. 24 at 18 ("For the reasons stated above, the Court **GRANTS**

7

1  Sentinel's motion to dismiss **WITH LEAVE TO AMEND**.") (emphasis original), Plaintiffs state
2  in their Opposition that they are "mindful of the limited scope that this Court allowed Plaintiffs' to
3  amend their pleading" and that, "[s]ince this Court's prior order did not expressly give Plaintiffs
4  leave to amend their UCL claim based on Sentinel's failure to investigate, Plaintiffs understand
5  that theory, and prong of the UCL, to have been dismissed with prejudice." Opp'n at 19:19-22.
6  Not surprisingly, Sentinel eagerly assents to this interpretation, despite the plain language of the
7  Dismissal Order granting leave to amend.

### III.  LEGAL STANDARD

#### A.  Standard for Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim. A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation and quotation marks omitted). Rule 8 provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8's pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Twombly*, 550 U.S. at 555 (quotations and citation omitted).

In considering a motion to dismiss, the court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). However, the Court may disregard any allegations in the FAC that the actual terms of the policies contradict. *See, e.g., In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) ("The court need not, however, accept as true allegations that contradict

1    matters properly subject to judicial notice or by exhibit."). Nor is the court required to accept as
2    true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable
3    inferences. *Id.* The FAC and the insurance policies control the outcome. *See Biltmore Assocs.,*
4    *LLC v. Twin City Fire Ins. Co.,* 572 F.3d 663, 665 (9th Cir. 2009). Moreover, "the tenet that a
5    court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause
6    of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. A
7    "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause
8    of action" is insufficient. *Id*. (quoting *Twombly*, 550 U.S. at 555).

**B.     Insurance Policy Interpretation**

"[I]nterpretation of an insurance policy is a question of law." *Waller v. Truck Ins. Exch., Inc.,* 11 Cal. 4th 1, 18 (1995).[9] "While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply." *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1264 (1992). "If contractual language is clear and explicit, it governs." *Id.* California courts require that courts interpret an insurance policy according to the "clear and explicit" meaning of the terms as used in their "ordinary and popular sense." *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 890 (9th Cir. 2021) (quoting *AIU Ins. Co. v. Superior Ct.*, 799 P.2d 1253, 1264 (Cal. 1990) (internal quotation marks omitted); *Bay Cities Paving & Grading, Inc. v. Laws.' Mut. Ins. Co.*, 855 P.2d 1263, 1270 (Cal. 1993) ("The clear and explicit meaning of the[] provisions, interpreted in their ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage[,] controls judicial interpretation.") (internal quotation marks and citations omitted)). In addition, "[t]he terms in an insurance policy must be read in context and in reference to the policy as a whole, with each clause helping to interpret the other." *Sony Computer Ent. Am. Inc. v. Am. Home Assur. Co.*, 532 F.3d 1007, 1012 (9th Cir. 2008) (citing Cal. Civ. Code § 1641 *inter alia*). "[I]f the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the

---

[9] Although Barbizon-NY's claims pertain to property in New York, California and New York law on the coverage issues here do not conflict. *See Emps. Mut. Cas. Co. v. N. Am. Specialty Flooring, Inc.*, 424 F. Supp. 3d 958, 967-68 (E.D. Cal. 2019) (choice of law analysis unnecessary where no material conflict exists between the laws of the states involved).

promisor believed, at the time of making it, that the promisee understood it." *Bank of the West*, 2 Cal. 4th at 1264-65 (quoting Cal. Civ. Code § 1649). "Only if this rule does not resolve the ambiguity do [courts] then resolve it against the insurer." *Id.* at 1265.

California courts have cautioned that "language in a contract must be construed in the context of that instrument as a whole . . . and cannot be found to be ambiguous in the abstract." *Producers Dairy Delivery Co. v. Sentry Ins. Co.,* 41 Cal. 3d 903, 916 n.7 (1986). Courts should "not strain to create an ambiguity where none exists," *Waller*, 11 Cal. 4th at 18-19, or "indulge in tortured constructions to divine some theoretical ambiguity in order to find coverage where none was contemplated." *Fireman's Fund Ins. Co. v. Super. Ct.*, 65 Cal. App. 4th 1205, 1212-13 (1997); *see also Safeco Ins. Co. v. Gilstrap*, 141 Cal. App. 3d 524, 533 (1983) (a court "may not, under the guise of strict construction, rewrite a policy to bind the insurer to a risk that it did not contemplate and for which it has not been paid."). Further, where an unambiguous exclusion applies, dismissal on a Rule 12(b)(6) motion is appropriate. *See Biltmore Assocs.,* 572 F.3d at 665.

## IV.   DISCUSSION

### A.   The FAC's Three Theories Of Unfair Business Practices Violating The UCL

The UCL prohibits any "unfair competition" which includes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. To state a claim under section 17200, a plaintiff must establish that the practice is (1) unlawful (*i.e.*, is forbidden by law), (2) unfair (*i.e.*, harm to victim outweighs any benefit), or (3) fraudulent (*i.e.*, is likely to deceive members of the public). *Moss v. Infinity Ins. Co.,* 197 F. Supp. 3d 1191, 1198 (N.D. Cal. 2016). Each prong of the UCL is a separate and distinct theory of liability. *Kearns,* 567 F.3d at 1127. "A plaintiff only needs to establish a violation of the UCL under one of these three prongs, as each operates independently from the others." *Moss,* 197 F. Supp. 3d at 1198.

Here, Plaintiffs base their single cause of action against Sentinel for violation of the UCL

10

on three theories: (1) Sentinel denied Plaintiffs' claims without proper investigation, FAC ¶ 82[10]; (2) Sentinel fraudulently markets and sells illusory Limited Coverage, *id.* ¶¶ 79, 80, 81, 83, 84[11]; (3) Sentinel relied on a pollution exclusion as an additional reason to deny Plaintiffs' claims for coverage, rendering the Limited Coverage "meaningless and worthless," *id.* ¶¶ 85, 86.[12] The Court addresses each theory in turn.

### 1. In The Absence of Entitlement To Coverage, Plaintiffs Do Not Allege A Plausible UCL Claim Based On Purported Failure To Investigate

In their FAC, Plaintiffs allege that Sentinel did not adequately investigate Plaintiffs' claims before denying coverage and that this constitutes an unfair business practices in violation of the UCL. *See* FAC ¶ 82. However, these allegations do not meet the requirement of Federal Rule of Civil Procedure 8 that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2), as they provide no more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *See Iqbal*, 556 U.S. at 678; *see also Najafifard v. Travelers Com. Ins. Co.*, No. CV 15-04422-BRO (FFMx), 2015 WL 12656283, at *4 (C.D. Cal. Oct. 15, 2015) (holding that plaintiff had not alleged sufficient facts to state a plausible claim to relief under the UCL based on conclusory allegations of bad faith claims handling practices); *Spine & Neurosurgery Assocs. v. UnitedHealthcare Ins. Co.*, No. 2:19-CV-00115-TLN-DB, 2020 WL 903333, at *5-6 (E.D. Cal. Feb. 25, 2020) (holding that plaintiff failed to allege sufficient facts to indicate defendant's conduct violated any prong of the UCL).

At the risk of stating the obvious, the need to investigate a claim for COVID-19-related

---

[10] Although Plaintiffs state that they believe their claim based on failure to investigate was dismissed without leave to amend (*see* Opp'n at 19:19-22), they nevertheless include in the FAC's UCL claim allegations that Sentinel "in violation of the law, conducted no investigation at all" (FAC ¶ 82) and that it "cavalierly violated its obligations under the Insurance Code" to "complete full and fair investigations of Plaintiffs' claims." *Id.* Accordingly, the Court will address this allegation.

[11] Barbizon-NY's policy does not contain a Limited Coverage provision. Accordingly, this theory of liability applies only to Barbizon-West.

[12] Because Barbizon-NY's policy does not include a Limited Coverage provision, Plaintiffs' allegation that the pollution exclusion renders that provision meaningless does not apply to Barbizon-NY.

business interruption losses is perforce premised on the plausible existence of coverage under the Policies. As one court reasoned, "where there are no claims that the insured property or nearby property has been physically damaged and access to Plaintiffs' property has not been entirely prohibited, there is nothing to investigate: coverage does not exist on the face of that claim." *Ultimate Hearing Sols. II, LLC v. Twin City Fire Ins. Co.*, 513 F. Supp. 3d 549, 565 (E.D. Pa. 2021). Indeed, numerous courts in California and elsewhere have easily disposed of claims premised on an insurer's alleged failure to investigate COVID-19-related losses when the undisputed facts establish there is no coverage. *See, e.g., FlorExpo LLC v. Travelers Prop. Cas. Co. of Am.,* 524 F. Supp. 3d 1051, 1061 (S.D. Cal. 2021) (dismissing claim that insurer failed to "properly investigate" alleged COVID-19-related losses where insurer properly denied claim based on an applicable exclusion). As one court in the Ninth Circuit explained when dismissing claims based on unreasonable investigation:

> Defendants' denials of coverage were based on policy interpretations. There was no need for factual investigations. In these circumstances, the Court cannot say the quick denial of claims was unreasonable, frivolous, or unfounded. Defendants were faced with hundreds of identical claims based on the same causal event, namely COVID-19.

*Nguyen v. Travelers Cas. Ins. Co. of Am.*, No. 2:20-CV-00597-BJR, 2021 WL 2184878, at *17 (W.D. Wash. May 28, 2021); *Kamakura, LLC v. Greater New York Mut. Ins. Co*., 525 F. Supp. 3d 273, 292 (D. Mass. 2021) (finding allegations that the insurer denied the claim quickly with little to no investigation did not suffice to state a claim for unfair business practices; "because defendant's denials were based on policy interpretations, not factual findings, it is not clear what would make [its alleged failure to investigate] unreasonable under the circumstances").

Where, as here, there is no coverage as a matter of law, Sentinel's purported failure to investigate cannot form the basis of a UCL claim.

**2.     The Limited Coverage Provision And The UCL**

Plaintiffs allege in a general way that Sentinel marketed and sold a policy to Barbizon-West that contained a Limited Coverage provision that provided only illusory coverage. However, Plaintiffs fail to allege even a single specific marketing or sale practice that Sentinel engaged in or

12

a single misrepresentation Sentinel made to them. Plaintiffs' allegations unsupported by facts result in a FAC that is hardly even "threadbare." In addition, Plaintiffs fail to allege facts showing that the Limited Coverage provision provided only illusory coverage. For both of these reasons, Plaintiffs' second theory of UCL liability fails as a matter of law.

### a. There Are No Specific Allegations That Sentinel's Marketing And Sale Were Fraudulent

Plaintiffs allege that the marketing and sale of Limited Coverage and the "'bait and switch' that occurred when a virus-related claim was actually made" (Opp'n at 14:13-14) were fraudulent and violated the UCL. Specifically, Plaintiffs allege that "Hartford's sale and marketing of the LIMITED FUNGI, BACTERIA OR VIRUS COVERAGE constitutes false, unfair, fraudulent, and/or deceptive business practices within the meaning of California Bus. & Prof. Code § 17200 *et seq*." FAC ¶ 84.

Federal Rule of Civil Procedure 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." "While fraud is not a necessary element of a claim under the [Consumers Legal Remedies Act] and UCL, a plaintiff may nonetheless allege that the defendant engaged in fraudulent conduct. A plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of that claim. In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading . . . as a whole must satisfy the particularity requirement of Rule 9(b). *Kearns*, 567 F.3d at 1125 (citations omitted); *see also id*. at 1124 ("Fraud can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word 'fraud' is not used)." (citation omitted).

Plaintiffs' claim concerning Sentinel's marketing of the Limited Coverage sounds in fraud and is grounded in fraud. The FAC uses the word "fraudulent" and synonyms for that word ("false," "deceptive," "does not disclose") to describe the marketing. FAC ¶¶ 3, 81, 84. Plaintiffs use similar language in their Opposition when describing their claim. Opp'n at 14:12-14 ("the Complaint focuses on what was marketed, advertised and sold to Barbizon, and the 'bait and switch' that occurred when a virus related claim was actually made.); *id*. at 14:19-20 ("the virus

1    coverage, even if limited, has to mean something real; if it does not, its marketing and sale is false,

2    unfair, fraudulent, and/or deceptive"); *id*. at 166 ("A plaintiff states a claim under the UCL for

3    illusory representations to a consumer."). Moreover, even aside from the use of these particular

4    words, the whole nature of the allegation is that Sentinel marketed insurance coverage that it knew

5    to be worthless, which is necessarily a claim for fraud, even if Plaintiffs had not used that word,

6    which they did. Accordingly, Rule 9(b) applies.

7    Rule 9(b) demands that the circumstances constituting the alleged fraud "be specific

8    enough to give defendants notice of the particular misconduct . . . so that they can defend against

9    the charge and not just deny that they have done anything wrong." *Kearns*, 567 F.3d at 1124

10   (simplified). "Averments of fraud must be accompanied by 'the who, what, when, where, and

11   how' of the misconduct charged." *Id.* (simplified); *see also Sanford v. MemberWorks, Inc.*, 625

12   F.3d 550, 558 (9th Cir. 2010) ("[T]o avoid dismissal for inadequacy under Rule 9(b), the

13   complaint would need to state the time, place, and specific content of the false representations as

14   well as the identities of the parties to the misrepresentation.") (citation and quotation marks

15   omitted).

16   The FAC's general allegations that Sentinel sold Barbizon-West an insurance policy with

17   the Limited Coverage that Sentinel knew it could never claim do not satisfy the heightened

18   pleading requirements of Rule 9(b). Plaintiffs fail to allege "the who, what, when, where, and

19   how" of Sentinel's supposedly fraudulent marketing and sale of the Limited Coverage provision

20   and how that could constitute a "bait and switch." They also fail to allege Sentinel's

21   misrepresentations regarding the Limited Coverage, or any promises above or beyond what was

22   written in the plain language of the contract that controls its interpretation. Indeed, Plaintiffs do

23   not allege even a single specific marketing or sale practice or even a single statement made by

24   Sentinel likely to deceive members of the public. In the absence of these basic allegations, it is no

25   surprise that Plaintiffs fail to identify which Sentinel employees engaged in fraudulent conduct or

26   made fraudulent statements, to whom they spoke, what they said or wrote, and when it was said or

27   written. Thus, the FAC is nowhere near specific enough to give Sentinel the notice required by

28   Rule 9 of the particular misconduct Plaintiffs claim was fraudulent in order to enable Sentinel to

14

1  defend against the charge instead of just denying it did anything wrong.

2  Under Rule 9(b), Plaintiffs' failure to plead this claim with particularity merits its

3  dismissal.

           **b.**       **The Limited Coverage Endorsement Of The West Coast Policy Is Not Illusory As It Does Not Preclude All Coverage**

6  Regardless, even if Plaintiffs had alleged specific marketing or sales conduct, their claim

7  suffers from the further problem that they have failed to allege any facts showing that the West

8  Coast Policy's insurance coverage actually is "illusory." An insurance provision is illusory only

9  where it results in a "complete lack of any policy coverage." *Secard Pools, Inc. v. Kinsale Ins.*

10  *Co*., 318 F. Supp. 3d 1147, 1153 (C.D. Cal. 2017), *aff'd*, 732 F. App'x 616 (9th Cir. 2018); *Young*

11  *v. Illinois Union Ins. Co.*, 2008 WL 5234052, *1 (N.D. Cal. Dec. 15, 2008) ("In order for a policy

12  to be deemed illusory, it must afford no coverage whatsoever."), *aff'd*, 366 F. App'x 777 (9th Cir.

13  2010). The reason for this is that illusoriness is an application of the doctrine of consideration:

14  "In order for a contract to be valid, the parties must exchange promises that represent legal

15  obligations. An agreement is illusory and there is no valid contract when one of the parties

16  assumes *no* obligation." *Scottsdale Ins. Co. v. Essex Ins. Co.*, 98 Cal. App. 4th 86, 94-95 (2002)

17  (emphasis added, citation omitted). Thus, "the mere *possibility* of *some* coverage is enough" to

18  defeat an allegation that an insurance policy is illusory. *Secard Pools*, 318 F. Supp. 3d at 1153

19  (emphasis in original) ("In order for Plaintiffs to overcome the [ ] Exclusion on the basis that it

20  renders the Policy 'illusory,' the exclusion must result in a complete lack of any policy

21  coverage"). Plaintiffs make no allegations and present no arguments that the Limited Coverage

22  provision somehow renders the West Coast Policy illusory.

23  Even if we ignore the West Coast Policy as a whole and focus only on the Limited

24  Coverage provision, that provision is unambiguous that Sentinel is obligated to cover "direct

25  physical loss or direct physical damage" to Barbizon-West's covered property, including the cost

26  to tear out and replace the affected area and the cost of testing after repair that is caused by fungi,

27  wet rot, dry rot, bacteria or virus resulting from an "explosion, windstorm or hail; smoke; aircraft

28  or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment;

15

sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage."

It is not hard to imagine scenarios in which the Limited Coverage would apply. For example, any building could be subject to water damage resulting in rot or fungi that could cause direct physical damage to covered property. *See, e.g.*, *Martz v. Leading Ins. Grp. Ins. Co.,* 2014 WL 3749711, at *1-4 (N.D. Cal. July 29, 2014) (finding water damage was a specified cause of loss, causing mold, which the parties agreed constituted "fungi" within the meaning of a "Limited Coverage For 'Fungi', Wet Rot Or Dry Rot" provision). Even Plaintiffs acknowledge that there could be coverage in certain situations where such physical damage or loss did occur. *See, e.g.,* FAC ¶ 22. Given these and other potential claims, the Limited Coverage provision could have provided coverage for other kinds of physical damage or loss experienced by Barbizon-West.

Where, as here, the language is clear that coverage applies in specific circumstances, the Court will not labor to find ambiguity through tortured – and misguided – construction. "[T]he mere *possibility* of *some* coverage is enough" to defeat Plaintiffs' argument that the Limited Coverage provision is illusory (*see Secard Pools*, 318 F. Supp. 3d at 1153) and here the provision provides "the possibility of some coverage that is not excluded." *See Crusader Ins. Co. v. Burlington Ins. Co.*, No. CV 1905371 PSG (PLAx), 2020 WL 4919387, at *10 (C.D. Cal. June 12, 2020). As a result, Plaintiffs have not alleged facts showing that either the West Coast Policy as a whole or the Limited Coverage provision in particular affords no possibility of coverage.

Plaintiffs' argument ultimately comes down to the assertion that the Court should view the Limited Coverage provision in isolation from the rest of the policy and then chop the Limited Coverage provision into five separate policies – one for fungi, one for wet rot, one for dry rot, one for bacteria, and one for virus. Viewing the virus coverage in isolation from everything else in the policy, Plaintiffs acknowledge that some types of businesses could have covered property that could be damaged by a virus (a farm that owns livestock, or a grocery store that sells food, for example), but Plaintiffs allege that *Barbizon-West's* covered property could never be physically damaged by a virus. FAC ¶ 81; Opp'n at 16:20-22 ("Sentinel did not offer—and research did not reveal—a single instance in which a virus changed the composition or structure of any nonliving or nonperishable business or educational property."). However, Plaintiffs provide no legal

16

1    authority to support the idea that when a provision insures against several perils (physical loss or
2    damage caused by fungi, wet rot, dry rot, bacteria or virus), the coverage is illusory if any one of
3    those perils (virus) is unlikely to affect the covered property of the insured.  *See, e.g., Westside*
4    *Head & Neck v. The Hartford Fin. Servs. Grp.*, No. 220CV06132JFWJCX, 2021 WL 1060230, at
5    *5 (C.D. Cal. Mar. 19, 2021) ("As a threshold matter, the Limited Coverage applies to multiple
6    perils – fungi, wet rot, dry rot, bacteria *and* virus . . . . There is no requirement that each peril
7    potentially be the result of each and every specified cause of loss.").

8    Like Plaintiffs, the Court is not able to think of a virus that could cause direct physical loss or damage to property of the type that would be owned by a modeling school, and Sentinel has not mentioned one either.  However, as explained above, that is the wrong level of generality at which to consider illusoriness.  Plaintiffs have not alleged any facts to show, and indeed have made no attempt even to argue, that either the Limited Coverage provision in particular or the West Coast Policy as a whole provides only illusory coverage.  Accordingly, Plaintiffs' UCL claim based on the alleged marketing and sale of illusory insurance coverage is defective for this reason as well.

### 3. Pollution Exclusion

Part of Plaintiff's theory of the "'bait and switch' that occurred when a virus-related claim was actually made" (Opp'n at 16:16-18) concerns Sentinel's reference to the pollution exclusion as a potential additional ground to deny Plaintiffs' claim for coverage when it stated in the Denial Letters that "the pollution exclusion could further bar coverage for the loss."  FAC ¶ 85.  Plaintiffs allege that "[g]iven [Sentinel's] reliance upon the pollution exclusion, [Sentinel's] marketing and sale of policies including the [Limited Coverage provision] is a false, unfair, fraudulent and/or deceptive business practice because [Sentinel's] interpretation of the pollution exclusion renders the purported virus coverage in the [Limited Coverage provision] meaningless and worthless."  FAC ¶ 86.

In the FAC, Plaintiffs include no factual allegations to clarify or support how the application of the pollution exclusion renders Sentinel's marketing and sale of the Limited Coverage fraudulent, nor how it renders the Limited Coverage meaningless and worthless.  This entire theory of liability is alleged in only the most conclusory fashion in paragraphs 85 and 86 of

the FAC. This claim sounds in fraud because Plaintiffs allege that the application of the pollution exclusion renders Sentinel's marketing and sale of the Limited Coverage provision "false," "fraudulent," and "deceptive." FAC ¶ 86. For the same reasons explained above concerning the marketing and sale of the Limited Coverage provision, this claim fails Rule 9(b) because it contains no specific factual allegations to support it. Further, this claim also fails Rule 8 because Plaintiffs assert only theories and conclusions but not facts, and so the unsupported allegations in the FAC are not even "threadbare."

In their Opposition, Plaintiffs mention the pollution exclusion only twice, both times as factual statements that "Sentinel also relied on the 'pollution exclusion' as 'further grounds for denial of the COVID-19 claims'" (Opp'n at 13:21-22) and that "Sentinel sold a Virus Endorsement to its insured, and then when a virus claim was made it was denied in part arguing that the virus claim fails under the 'pollution exclusion.'" Opp'n at 15:27-16:1. Plaintiffs do no more than state the fact that Sentinel cited the pollution exclusion as possible alternate grounds for denying the virus claim. They present no argument or caselaw concerning how Sentinel's reliance on the exclusion renders the Limited Coverage provision meaningless and worthless nor how it violates the UCL. Plaintiffs also do not respond to Sentinel's arguments that no plausible claim for relief can be stated under the UCL simply because Sentinel cited the pollution exclusion as potentially barring coverage in its Denial Letters, so these arguments remain unrebutted. This is sufficient to deem Plaintiffs' opposition to dismissal based on these arguments to have been waived. *See Franchise Tax Bd. of California v. Hyatt*, ––– U.S. –––, 139 S. Ct. 1485, 1491 n.1 (2019) (deeming an argument waived where the defendant failed to raise an issue in the opposition brief); *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 888 (9th Cir. 2010) ("A plaintiff who makes a claim . . . in his complaint but fails to raise the issue in response to a defendant's motion to dismiss . . . , has effectively abandoned his claim . . . ") (citation and quotation marks omitted); *see also Jenkins v. County of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (holding plaintiff abandoned claims by not raising them in opposition to motion for summary judgment).

**B.     Leave to Amend**

The Court has already provided Plaintiffs the opportunity to amend their complaint, but

their amended complaint still fails to allege facts sufficient to state a claim under the UCL. Further amendment would therefore be futile.

## V. CONCLUSION

For the reasons stated above, the Court **DISMISSES THE UCL CLAIM WITHOUT LEAVE TO AMEND.** Because that is the only claim actively alleged in the FAC, the Court **DISMISSES THE FAC WITHOUT LEAVE TO AMEND**.

**IT IS SO ORDERED.**

Dated: December 3, 2021

THOMAS S. HIXSON
United States Magistrate Judge